Samsel Jones Your Honor, it's Dennis Reardon. I'm joined by Ted Samsel Jones as a co-counsel. There was some confusion initially about whether I would be able to be here today. Okay, you both are on the briefs, you both have appeared in the case. Now tell me your name again, I'm sorry. Dennis Reardon. R-I-O-R-D-A-N. Well, if I turn to the brief, I'm sure I'll see it. Thank you very much, Your Honor. Go ahead. As I say, Dennis Reardon and Ted Samsel Jones for Appellant Michael Baker. Consistent with the rules of evidence, the federal rules of evidence, this Court approves the use of summary charts in criminal cases and approves the use of witnesses to explain those charts, which generally consist of references to documentary evidence. But this Court has made clear that there are functions that a summary witness cannot serve. They cannot serve to organize and summarize the government's case at the end of the case. They cannot supplement a closing argument or essentially present a closing argument. And that also the Court has stated that their function is to present prior evidence that has been presented but not to present new evidence, as the Court said in the Nguyen case. I think it's fair to say that any time an assertion is made that a particular exhibit relates to and supports a particular count in an indictment or a particular allegation in the indictment, that's an engagement in inference drawing that's perfectly appropriate in a closing argument but is most assuredly not appropriate as a subject for testimony. Counsel, you didn't mention in your opening, in your briefing, United States v. Armstrong, you have seen that we have accepted the use of summary witnesses, correct, despite that I will say the rule doesn't quite seem to cover that, but nonetheless we have agreed in U.S. v. Armstrong that you can use such witnesses. So it seems to me that the issue here that you're presenting correctly, so, is whether this summary witness went too far. It does seem to me the purpose in the rule was talking about summary of exhibits, written materials, is to help in a complex, voluminous, not just complex, but large volume of evidence case. And is that in this category? You can tell us it's not, but it does seem to me as fair arguments in that category. It's to help the jury understand when you have all these documents and these witnesses and whatever else, here's a witness that can be cross-examined. How does this all fit together? Why is it going too far to do what you just described? To say here's the exhibit that explains this other comment that was made and to try to tie things together? Well, Your Honor, in this case, this witness, and let me stress the most important context. Agent Callender addressed some counts briefly, but the government spent 15 pages with him on count two. And count two is the most important count in this case. And the reason for that is that count two is charged in January 18th of 2008. It's the first of nine charges of wire fraud. And the government's theory is that Mr. Baker has guilty knowledge as of January. If they can prove that, they can essentially run the table on the following nine counts. And what Agent Callender does is he doesn't simply say that these tapes are the basis for count nine. He relates 12 other exhibits and says they support that count. He's asked questions during his testimony about what he understands to be the case. He's asked questions about whether one exhibit relates to a piece of testimony and supports and is also related to a second exhibit on count two. He really does, as to count two, the most important count, and it's the focus of the government's closing argument, much focus, is to summarize and organize the government's case on count two, the most critical count. And far beyond, and let me say this, he constantly makes assertions that are not related to prior testimony. Nguyen talks about summary witnesses as basically, you know, perhaps relating documents to testimony that's been given already. But when someone answers the question, what's your understanding of what the document A does, or how does what document- He introduced a lot of those exhibits. He was the case agent. They introduced a lot of those exhibits. Do you have a problem with him introducing the exhibits? Well, the thing in that regard, Your Honor, is that they were unobjected to at the beginning of the testimony that occurred. And a lot of those exhibits- But a party doesn't get to put the email, introduce it, put it up on the screen for the jury, and have someone read the key lines? I mean, that's done in every trial I've ever seen with documents. Well, that well can be true, Your Honor, but I submit to you that when you ask a summary witness what their understanding of an exhibit is, you're not within the proper bounds of summary witness testimony. Would you object if the government had labeled all the exhibits that they said related to count two, if they had labeled them, you know, exhibit 2A, exhibit 2B, exhibit 2C, to organize it for the jury just in the way the exhibits are numbered? Would you object to that? No, I wouldn't think so, Your Honor. Okay. I wouldn't think so. So what's different here than doing that? Well, I submit that what he frequently did was offer opinion testimony about the probative relationship between one exhibit and another. And, Your Honors, I submit that if the defense had called the witness and said, this is a man who's already investigated, he's 27 years in the FBI, and he is going to testify about all of the exhibits that tend to undermine a given allegation in the indictment or a given count, that the government would have objected to that as being closing argument, guised as testimony, and the objection would have been sustained. I don't think that any court has ever said that you can take counts in an indictment and have a witness list all of the counts that, in their opinion, relate to that particular allegation or the count specifically. I think that the court, in order to prove this, would have to go really in the face of Fullwood and Nguyen, which the government actually relies on in any number of cases to talk about the limitations of this because it's a witness coming at the end. You don't have a case that said this was improper, though, do you? You don't have a case, do you, that says it's improper to ask a witness what count exhibits relate to? I think that's fair, Your Honor, and I think the reason for that is that I haven't seen anything to suggest that that has ever been done with a summary witness before. What I would like to do, and subject, of course, to the court's further questions, is bring out something very important which I think needs to be stressed about the instructional claim dealing with fraud, which is to say this, that the trial court presented two different prongs, if you will, two different theories of what a scheme to defraud is. One of them was to obtain property from another. We claim that that was insufficient because it didn't make clear that the person who you have to intend to obtain the property from is the victim of the deception. But what I want to emphasize— I have a question about that. I mean, I know you wish the instruction had been different, but weren't the victims here giving money to the defendant? Because by paying an inflated stock price, that excess demand supported, drove the stock higher, and your client, I believe he received stock options that was part of his compensation. So, I mean, it seems to me that—I know you can't say victim A on this day gave him $1,000, but in an economic sense, didn't the victims actually increase your defendant's bottom line? But I think, Your Honor, you would agree that that's a point that goes to the sufficiency of the evidence. The jury was not called upon to make that finding because they were never told by any instruction that the person who has to be giving up the property of the defendant is the victim of the deception. But let me make—this is the central point I wanted to make. There was an alternative theory here, which is that a scheme to defraud is either to take property, obtain property from another, or simply a plan to financially benefit. That's the second prong of this instruction. That instruction, Your Honor, I submit, not only is deficient because it doesn't make it clear that it's the victim of the deception who has to be the person who is losing property. Under that instruction, Your Honor, there is no requirement that there be any loss by anyone at all, only that there be a scheme to financially benefit. So—and frankly, Your Honor, the opinion in Hoffman cites a critical case in this regard. In the Griffin case, what this court found in reversing was that misrepresentations were made to the state of Texas about tax credits, but the tax credits were tax credits owned by the Federal Government, not by the State Government. So there had not been an intention or an effort to deprive property of the person— Why would this be—if there is any error, why would it be harmful? Because, I mean, throughout your brief, you say we're not—there's no dispute there's a fraud. Yes. It's just we don't think—you know, we were defending our client's knowledge of the fraud. Exactly, Your Honor. And the reason it would be is in closing argument and the crux of the closing argument at the end is Baker benefited. He made a lot of money. Some of it was simply payment and compensation as CEO, but they said there's 27 million reasons why you should convict in this case. But that's an argument about financial benefit that they pounded on. But financial benefit is not enough. There has to—we say there has to be a loss by the victim, and we submit that Hoffman says that and put those six. But beyond that, there at least has to be a loss by somebody. And in this case, under that theory, there's no—you don't need a loss by anybody. You merely need a financial benefit. Then we're dealing with a Yates issue because if there's two alternative theories here, and one of them is defective, saying you don't need any loss at all to convict of fraud, only a financial benefit, then the fact that arguably there could be a valid theory, which was the first theory given, can't prevent a reversal because the court would have to be able to say with absolute assurance that the conviction rested on the theory of deprivation of property of another. When in this case, the government argued very, very powerfully that Baker should be guilty because of his very substantial economic gains. And so I think that this is an extraordinary—I think this whole issue of defraud in the wake of Cleveland, when it became clear that what you need is property losses, real property losses, I think the skill and sense—and this court has essentially said it has to be from the victim. But everybody would agree that you need a property loss to have a fraud either under securities law or under wire fraud. And in this case, the alternative theory allowed the jury to convict without finding a loss by anyone at all, merely a benefit on the part of Baker in terms of— meaning according to this theory of the instruction, you've got fraud. When this court has made clear that is not the case. So we think it's a really seminal case in terms of deciding this issue of fraud. And let me make a very important point. That portion of the instruction is not in the Fifth Circuit form instruction. In other words, when you come to fraud, the Fifth Circuit's form instruction says it's obtaining property from another. The phrase or financial gain is not found in the court's—in the pattern instruction. And for that matter, my recollection is it wasn't even requested by the government. The court had used the instruction in the prior trial and it used it again. And finally, let me emphasize that this court has held that the defendant is entitled to a theory of the case instruction and the theory of the case instruction here most assuredly was that there has to be a deprivation from the victim, that mirror image of loss by the victim, gain by the defendant. And again, Your Honor, I think that if the court could find—well, a jury could reasonably— there is no instruction that required the jury to make that kind of finding. I'm up to just about the time that I have for 15 minutes. I would reserve the other five minutes unless I could respond to the court's question before sitting down. I think we have your argument. Thank you. We'll hear you again. Good afternoon. May it please the court, John Alex Romano on behalf of the United States. The jury convicted Michael Baker for defrauding of making misrepresentations about the health of— financial health of ArthroCare Corporation. And it convicted him in connection with his role in orchestrating a scheme to defraud the shareholders of hundreds of millions of dollars. All the issues that are raised on appeal were correctly decided by the district court. And we'd ask that the court affirm the convictions in their entirety. With respect to the first issue, the district court properly exercised its discretion in allowing the case agent's testimony. Most of Agent Callender's testimony was not even summary testimony because it concerned newly admitted exhibits, exhibits admitted during the course of his examination. But what do you say to the exchange that your friend on the other side and my friend up here was having, dealing with having a witness identify for the jury, here are the exhibits related to a particular account, here's what you need to look to if you get them back in the jury room. Just, I mean, my concern in this case, if we write a published opinion, no matter which way we go, is that we're not expanding the use of summary witnesses beyond what is reasonable, what has already been marked out to the extent there's some opening. We can certainly deal with that. So I'm worried about where the lines are. What about that line? I don't think that would be crossing the line at all. In fact, I think the concession by my opponent, Mr. Reardon, that you could number exhibits in a way to correlate the numbers to the accounts to which they relate is a concession that you're allowed to engage in that type of organizing for the jury, particularly in complex cases where this court has allowed the admission of summary testimony and summary evidence in complex cases involving voluminous evidence. And I think it's important to place in context what this testimony was because it's centered around three demonstrative charts. These are exhibits 1068, 1069, and 1070. And the chart itself is proper under Rule 611A. A limiting instruction was given about the chart, and it was innocuous, the chart. It was almost identical to what was in the indictment. So it just contained an additional column that set forth the exhibit or the exhibits where the wire communication or the public security filing or the alleged false statement, it correlated the exhibit to that wire communication. That was, for example, charged in the wire fraud counts. And what Agent Callender did in his testimony was he identified exhibits on the chart. He identified factually related exhibits, placed some of the exhibits into context. He was asked and testified whether the jury had seen a particular exhibit or not before, whether it had testimony about the exhibit, but he did not summarize any testimony by a witness. So I don't think his testimony even comes close to the line that this court or the admonitions that this court has given about summary evidence. He did not, for example, recap a significant portion of the government's case on rebuttal, which is what happened in Fulton. He did not, again, summarize witness testimony, which was a flaw found in the Castillo. He did not introduce hearsay in his testimony or draw conclusions about the state of mind of the defendant, which is what happened in the Nguyen case. So we submit that the district court properly exercised its discretion in allowing his limited testimony. And I would just make one point about or a couple of very quick points about harmless error. To the extent this court disagrees, any error here was harmless. Agent Callender's testimony on direct, when you strip out the pages on where there's a colloquy about the defense objection, it's about 36 pages of direct testimony out of a trial that involved almost seven days of presenting evidence to the jury. The evidence of Michael Baker's guilt was very strong, we submit. And the jury acquitted on three counts, including on one count, that according to my opponent's opening brief, count 13, he claims that that was the subject of improper testimony by Agent Callender. Well, the fact that the jury would acquit on that shows that it was not prejudiced by any error in Agent Callender's testimony. And, again, I submit that there was no error in the district court allowance. Is there something from the government's view that explains the acquittal on the two counts as opposed to the conviction on the others? What was different about that presentation? Your Honor, I don't know what would account for that. Certainly, the government submits the evidence proving it was counts 8, 10, and 13 where the jury acquitted that the government's— Were they separate in some way? Were they distinguishable in some way? Your Honor, I— Well, if you're not ready for that, I'm just trying to understand to what extent there's compromise back in the jury room without much logic to it or really there is a way to separate those of acquittal and those of guilt. I would just say, I think just the fundamental point I was trying to make, perhaps inartfully, was just that the jury made up its own mind about the evidence. So unless this Court has any more questions on summary evidence, I'm prepared to proceed to the next claim. Well, it's not what the appellant raised next, but I want you to address the introduction of evidence produced by or developed by the SEC and whether, in fact, they should be considered the same party or having the same motive for introduction. We do have issues of litigating authority, and I think the SEC has its own litigating authority as opposed to the DOJ, which fights over that a good bit. But I don't know if that's a bright-line rule. What is the rule here that we ought to be applying, and should we find that—just how would you have us resolve that issue that you think fits within the meaning of the rule? On the same party determination, Your Honor? Yes, just to place it into context. Same party, same motive. Sure. What's the right—is it the same party, or is it not really the same party, but it's at least the same motive? It's two requirements. Again, this, of course, goes to submit that the district court didn't abuse its discretion in excluding. This is a prior deposition testimony, of course, of Brian Simmons, who was deposed by the SEC in February of 2010, and there's no dispute that it would qualify as hearsay, so the question is whether it fits within the Exception 8 of 4B1. One requirement is that the party that took the testimony has to be the same party against which you're introducing it. And on that question, we think the district court got it right. And to your question and your point, Judge Southwick, the SEC does have independent statutory authority for conducting securities law investigations. The Department of Justice does not have control over the SEC's litigating activities, and I think that distinguishes this case from the principal case relied upon by my opponent, the Scalina case out of the Seventh Circuit, where the Seventh Circuit did find that the CFTC and the DOJ were the same party, but that was based on the statutory provision giving the DOJ oversight over the CFTC's litigation. You just don't have that in the context of the SEC. I kind of see what the distinction is between party and motive. It seems to me that there could be so much involvement-related investigation between DOJ and some other agency, SEC here, that they really are traveling on the same path. They are ultimately pursuing the same result. And it seems to me at times, and I don't know if it comes in on a motive or same party, what I'm asking, and that's why I presented the question initially that way. But it seems to me – give me a definition of what it means to be the same party. Is it sufficient that they're operating for the same purposes in this particular matter that led to the creation of the evidence by one party and now to be introduced by the other? No, Your Honor. I think there has to be some measure of control by one party, and I think there needs to be much closer – How do you get control? Why do you say that? By statute, Your Honor, it's control over the direction of an investigation. It's certainly not unusual for the SEC and the Department of Justice to put up parallel and separate investigations. But certainly the one circuit court that has found the Department of Justice the same party as another entity, it looked to that measure of control. And just as a factual matter – So you're saying that's a categorical rule if they have different litigating authority? So even if the DOJ attorney had sent an email saying, ask these 20 questions, you'd still say they're not the same party? No, Your Honor. And I was going to go to that next point, which is just as a factual matter here, the record shows that that type of collaboration did not exist. It's undisputed that the Department of Justice did not attend the deposition of Brian Simmons. It did not attend any of the depositions conducted by the SEC. And, in fact, the Simmons deposition occurred at a very nascent stage of the Department's investigation. The Court can even see that, I think, from the materials submitted by my opponent. I guess then getting back to Judge Southwook's question, what's the standard if there is a – you seem to concede at some level of involvement they could be the same party. So how do you figure out what's enough? I think some measure of direction, Your Honor, as to the other party. But you don't have that here. I do think this – we're all in the first requirement of showing same party. So I think some direction by, for example, the Department of Justice to the SEC would be a relevant factor. And we know the district court in the Martoma case – it's a case we cite in our brief – it did look – it had a similar issue arise as to whether the SEC and the DOJ were the same party. And it looked at the absence of that type of direction from the DOJ to the SEC. And that was one factor the Court considered in finding that they were not the same party. But even if – you know, separate from the same party determination is the question of whether or not there was a similar motive and opportunity by the SEC to question the deponent, Brian Simmons, in the same manner that the department would have cross-examined Simmons had he testified at trial on behalf of the defense, which is what the defense wanted. And here the district court, again, we think got it right that there was not a similar motive. When the SEC deposed Brian Simmons in early 2010, it was during the investigation stage of its proceeding. It was trying to gather information, develop leads, possibly lock in testimony. And if the court looks at the excerpts of the deposition that were proffered by the defense that the defense wanted admitted, the court will see that the SEC really doesn't press Simmons when he denies knowledge of certain conduct. And that's a really very different context than what the government faces at a criminal trial where it's proceeding on an indictment returned by a grand jury. It has to prove guilt beyond a reasonable doubt. When a witness in that setting testifies in a way that's inconsistent with the guilt that's charged in the indictment, the government's motive is to impeach that testimony. And multiple courts have held, and I think these cases are on page 38 and 39 of the government's brief, multiple courts have held that an agency like the SEC does not have a similar motive in questioning a witness that the government has at a criminal trial. And there's also the question of whether there's a similar opportunity to conduct that examination. And certainly when the SEC deposed Brian Simmons in 2010, it did not have the same information about Simmons and about the fraud at ArthroCare that the government had at the criminal trial. It bears remembering that multiple witnesses at the criminal trial testified that Simmons knew about the fraud at ArthroCare and was involved in it, including Simmons's own boss, the former CFO of ArthroCare, Michael Gluck, testified that Simmons knew about and was involved in the fraud at ArthroCare. So separate and apart from the same party determination, the absence of a similar motive and opportunity by the SEC to question Brian Simmons in the same manner that the government would have done at a criminal trial on cross-examination precludes admissibility under the hearsay exception in 804B1 governing prior testimony. The district court also made a determination that we think goes to Rule 403 as to the unreliability of this testimony if it were to be admitted without the government having an opportunity to cross-examine the witness. We'll rest on our brief for that argument, but that would be a separate basis. Would you, before you run out of time, address the Rosemond situation? Most certainly, Your Honor. The jury instructions on a compass liability the government submits do not violate the rule in Rosemond. In Rosemond, of course, the Supreme Court applied settled requirements for aiding and abetting liability to a 924C offense, the compound crime. We've got a difference in circuits, and we haven't directly ruled on that. That's correct, Your Honor, and I don't think that any circuit has grappled. In the Rosemond case decided by my opponent, I don't think any circuit has grappled with the type of instructions that were given in this case on a compass liability, which we believe are fully consistent with Rosemond. Rosemond, of course, holds that there has to be an advanced knowledge instruction in a 924C offense with respect to the accomplice's knowledge of a gun being used by one of his confederates during the offense. Well, that knowledge requirement is embedded in a couple of elements of a compass liability that the jury was instructed on. The first would be the jury had to find, if it's going to rely on a compass liability, it had to find that Baker associated with the criminal venture. And then within that, the district court further defined what association with the criminal venture means to require that the jury define that defendant shared the criminal intent of the principle. So he had to act with the same mens rea as the principle. So in the context of a wire fraud account, for example, that would require that he, the jury define that he knew about the scheme to defraud because the principle has to knowingly devise a scheme to defraud. It would have required that he acted with a specific intent to defraud. And it would have required the jury to find that he had knowledge or that it was reasonably foreseeable that a wire would be used in furtherance of the fraudulent schemes. So I think that requirement would satisfy, or at least certainly go a long way towards satisfying the knowledge requirement from Rosemond. But there's more because the jury also had to find as an element of a compass liability that defendant Baker sought to make the criminal venture successful. So how can he, the defendant, seek to make the criminal venture successful without knowing what that criminal venture is? So we would submit that the instructions that were given on a compass liability, at least in the context of wire fraud and securities fraud, which is the counts they relate to, that they are sufficient under Rosemond. And I would just like to turn to the other questions. JUSTICE SCALIA. Well, what are you saying then would be the proper approach? You seem to be saying that even if Rosemond applies to this sort of offense, you are satisfied because of what you just told us in the instructions. That doesn't constitute a holding that you must have advanced knowledge in a case such as this that's outside the 924C context. Are you arguing— JUSTICE SCALIA. Are you arguing that limited to 924C? JUSTICE SCALIA. So what is your point? Are you saying it's not limited, but it's satisfied here, or it doesn't matter? MR. LIEBERMAN. I'm arguing, Your Honor, that it doesn't matter. And certainly Rosemond applied—requirements that it applied to the 924C context have already existed with respect to aiding and abetting liability. It's just that unique circumstance in a 924C context where, and the Court held in order for the accomplice to intend the crime, the accomplice must intend not just the predicate drug trafficking offense but the gun use as well. And the Court said, well, how do you do that when the affirmative act that the accomplice takes only furthers the predicate offense? Well, in that context, the Court required a jury finding that the individual had advanced knowledge of gun use. And the Court was concerned that the accomplice has to have enough notice ahead of time to make the decision to walk away if the accomplice wants to, because if notice of the gun use arises during the course of the offense, then it might be too dangerous for the individual to walk away. So Rosemond was applying the settled requirements of accomplice liability to that circumstance. Ultimately, I don't think it matters because, for the reasons I've stated, the advanced knowledge requirement, I think, is reflected in the existing instructions as to accomplice liability. You can move to whatever your last area to cover might be. Yes, Your Honor. And this, of course, goes to the elements of wire and securities. The government submits that the indictment is properly charged and the jury was properly instructed on those elements. Most of the focus in my opponent's brief had been on this mirror image requirement, this argument that the object of a scheme to defraud under the fraud statutes has to be to obtain money or property from the victims. Of course, no case court has ever held that. Certainly, this Court and the Supreme Court has said that the object of a scheme to defraud must be to harm or to affect the victim's property rights. But the jury instructions in this case required that finding. If I may just briefly go through the instructions, because the jury was instructed, first, the district court described the scheme as one to deceive investors about ArthroCare's financial condition, and Mr. Reardon this morning focuses on this language, this alternative language, that the scheme must be intended to deprive another of money or property or bring about some financial gain to the person engaged in the scheme. Well, in this case, the only way, and the jury was also instructed that it had to find that the scheme was substantially similar to the one charged in the indictment, and as this scheme is charged, there is no way that Michael Baker gets enriched without harming the property rights of ArthroCare investors. A purpose of the scheme to defraud, and the purpose of the scheme is charged and can count in paragraph 18 of the indictment. The purpose of the scheme included getting ArthroCare investors to reduce the market price of ArthroCare stock. And another purpose is to enrich Michael Baker, and Michael Baker gets enriched through the appreciation of his stock holdings, and that happens because investors are given false representations about the health of ArthroCare Corporation to induce them to continue to buy and hold ArthroCare stock. Those are the 24 or 25 million reasons why that was the reference. Certainly, and I see that my time has expired. Finish your sentence. Certainly, it was as a result of ArthroCare investors being fraudulently induced to buy and hold ArthroCare stock that you have the gain to defend Michael Baker, and we'd ask that the court affirm the convictions. Thank you. All right. Thank you. Your Honor, a number of quick points. The government referred to the demonstrative chart, and actually this is a very good way of drawing the dividing line between what's permissible and what is not. Those demonstrative charts are in the record. For instance, Exhibit 1068. They weren't submitted to the jury, but these are the ones used in the examination. Take Count 2, which, as I say, is the most important count in the case. The chart has Count 2, the date of the alleged offense, and then it has six or seven exhibits, all listed as 519, because there were different clips of this tape recording that were played. Okay. Hard to argue there's anything terribly prejudicial about that, okay? But what doesn't occur on the chart is that then Calendar goes on to list 12 other exhibits and says they support conviction on Count 2, and as to those 12, it's not simply like here's a list of 12 exhibits that also relate to that. He gets questions like, okay, the jury's heard some testimony about Mr. Denker leaving ArthoCare and coming back. Now let's look at an exhibit here. Quote, Are you able to tell from this employee file what letter, employment letter, this relates to? Does it relate to his initial employment or when he came back to ArthoCare? No. This relates to him coming back to ArthoCare. That is an opinion. That is an inference, okay? That's very different than just relating exhibits and saying they support Count 2. When a summary witness is asked whether there are exhibits that prove a formal relationship between ArthoCare and DiscoCare, and he replies, Absolutely. Absolutely is not a statement that a summary witness will make. I mean, it's in a ñ and further in that regard, at one point he's asked, Is something consistent or inconsistent with the organizational charts at ArthoCare? That is consistent. Well, that's a perfectly appropriate statement to make in closing. But saying that something is consistent, one with another, is obviously the kind of inference drawing that you do in closing. Quickly, bouncing around. Going on to the defraud issue, the government just said that there is no case which holds, or this court has never held, that the loss has to be by the victim of the deception, okay, the loss of property. That's exactly what the court said in Griffin, and that's what this court reiterated as a central point of its opinion in Hoffman, because it said in that case, hey, the deceptions were to a state agency, but the potential loser of property was the federal agency, so there's no fraud. And it ordered a reversal in Griffin. On the issue of the testimony of Brian Simmons, the basis on which the court at the second trial disallowed that was that it's not the same party. And we submit, and I think the court's questions have gone to this, that the level of cooperation in this case, it's not some blanket rule that if you're in the federal government, two agencies are the same party, but there was an extraordinary level of cooperation between the SEC and the government, the prosecutors here. I know you don't have much time, but what is that cooperation? There's no evidence, the example Judge Costa gave, of sending questions to the SEC interrogators or otherwise. They may have had similar desires to pursue a particular set of events, but is there any evidence that they had any role to play in that deposition? That the federal government? No, no, the DOJ had any role to play in the SEC deposition itself. Well, Your Honor, I submit, and I would have to refer the court to pages of our brief, where we discuss the e-mail traffic and so forth between the two, and we just submit that, and we have to rely on what the government gave us at the second trial, although it didn't produce in the first, that that's an extraordinary level of cooperation. And when you come to the motive question, of course, subsequently, one entity is going to have more questions that it would have liked to ask than at the prior examination. But as we've cited, there's a generous standard when you're dealing with the same motive requirement. And finally, just on the Roseman issue, let me say again that the key defense in this case was, okay, there was fraud there, but Baker did not learn of it until later, after all of the wire fraud charges here. That was the defense. The notion of needing advanced knowledge, which is what Roseman holds, was key to that notion of a defense. The language we requested under Roseman was correct. We're entitled to a theory of defense instruction, and we didn't get it in this case. Thank you very much, Your Honors. Thank you both for presenting so well your sides in this case. Take it down to advisement.